[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. STATEMENT OF FACTS
The above-entitled action involves a Neglect/Uncared For Petition filed by the Department of Children and Families (hereinafter referred to as the Petitioner) with respect to Salvatore R Jr., born on February 1999 to Erica S and Salvatore R Sr. On June 4, 1999 an Order for Temporary Custody was entered by the Court (Resha, J.). On June 4, 1999 the subject petition was filed alleging that Salvatore R Jr. was neglected in that he was being denied proper care and attention physically, educationally or morally; neglected in that he is being permitted to live under conditions, circumstances or associations injurious to his well-being, and that he is: Uncared for in that he is being permitted to live under conditions, circumstances or associations injurious to his well-being, and that he is: Uncared for in that he is homeless, and in that his home cannot provide for the specialized care which the physical, emotional or mental condition that the child requires. The adjudicatory date for the Neglect/Uncared For Petition is June 4, 1999. Specific Steps were signed by the parents and court ordered on June 14, 1999. All facts CT Page 4980 subsequent to June 4, 1999 have been admitted by the Court for dispositional purposes only.
Mrs. Rose S, maternal great grandmother, was granted intervening status and expressed a desire to take custody of the minor child. She had also presented herself to the Department of Children and Families as a potential placement for Salvatore.
On July 2, 1999 all parties agreed to allow the Order of Temporary Custody to remain in effect until further order of the Court. The Court ordered psychological evaluations performed on both the parents and on Rose S.
On March 2 and 3, 2000 the matter was tried before the Court. At that time the Court took Judicial Notice of the Court file. The parties stipulated that the court could also consider the testimony of Geraldine Rodda, R.N. and Mildred Ognaw, which was given under oath at a prior court hearing involving this matter on July 1 and 2, 1999. Nurse Rodda testified that Salvator's mother repeatedly held him without supporting his head, a circumstance that could result in brain injury to the infant (TR at PP 33-34). The mother had also stated her interest to feed the infant milk if she could not afford formula regardless of the infant's milk allergy (TR of 7/1/99 at p. 35).
Attempts at intervention to assist the family in caring for the child were met with resistance from the mother (TR of 7/1/99 at p. 36). Mother's behavior during Nurse Rodda's visits included throwing a telephone at the infant's grandmother (TR of 7/1/99 at 40-41), and foul language (Id at p. 40).
Mildred Ognaw testified that the infant was fed bottles of formula left unrefrigerated for up to thirteen hours (TR of 7/1/99 at p. 76). Ms. Ognaw further testified that the infant's parents fought a lot, hitting and kicking each other during the time they lived in her home with the infant (TR of 7/1/99 at pp. 53-54), and on one occasion, while the mother was holding the baby, the father pushed the mother and mother fell on the couch (Id at p. 53). On another occasion, when the infant was in the bedroom with his parents, the parents fought and father pushed mother off the bed onto the floor (TR of 7/1/99 at p. 55-56). Ms. Ognaw further testified that on June 1, 1999 at K-Mart, with the infant present and crying, the parents engaged in a physical alteration that required police intervention (TR at p. 57-58). Following the K-Mart incident, mother sat in a driveway holding the infant for an hour, sitting in a position with the infant that obstructed traffic which might enter the driveway (TR of 7/1/99 at p. 59-60). CT Page 4981
At the time of the child's removal the parents were staying with various relatives (TR of 7/1/99 at p. 52, 60). The infant has been in the care of the Department since June 2, 1999. Since June 14, 1999, the parents have not successfully completed the court ordered specific steps.
The infant is currently in non-relative foster care placement. Contact with his parents has been sporadic (TR of 3/2/00 at pp. 54-55, 71). Salvatore's parents demonstrate minimal parenting skills during supervised visitation (TR of 3/3/00 at pp. 33-34). On the child's first birthday, mother stated to witness Sandy Ruscol that mother was tired and hoped that the infant would sleep through the visit. Mother did not bring the child a gift or cake, ask about developmental milestones, or tell her son "happy birthday" (TR of 3/3/00 at p. 36-38). Father did not attend the visit on his son's first birthday (TR of 3/3/00 at p. 36).
Dr. Pamela Kwittken, the child's pediatrician, indicated that she is concerned about the mother's ability to care for the child. The Petitioner is seeking a commitment to the Department of Children and Families for a period not to exceed twelve months and have the specific steps made orders of the Court.
II. LAW
A. Adjudication
The proper standard of proof in a neglect case is the civil standard of a fair preponderance of the evidence. The Department of Children and Families has the burden of proving its allegations by a fair preponderance of the evidence, and in the adjudicating phase, the Court is limited to events preceding the filing of the petition or the latest amendment. Practice Book Sec. 33-12; Sec. 33-3 (a). Pursuant to Connecticut General Statutes Section 46b-120 et. seg. A child may be found "neglected" if that child is being denied proper care and attention physically, educationally, emotionally or morally, or is being permitted to live under conditions circumstances or associations injurious to his well-being.
The Department of Children and Families has proven by a clear preponderance of the evidence that Salvatore R Jr. was neglected. The manner in which the child was held, the mother's attitude toward feeding milk instead of formula; the disruptive conduct in the presence of the child, all demonstrate the neglect. The evidence clearly shows that the Petitioner has established each of its neglect CT Page 4982 allegations.
Connecticut General Statutes Sec. 46b-120 (9) provides that a child or youth may be found "uncared for" who is homeless, or who's home cannot provide the specialized care which his physical, emotional or mental condition requires. The Court finds that the Petitioner has proven this allegation on the ground that the parents were unable to meet the specialized feeding needs of the child. The child has an allergy to milk, yet his mother expressed a desire to feed him milk because of the cost of formula. The mother also fed the child bottles of formula left unrefrigerated for up to thirteen hours. It is evident to the Court that the child's specialized needs were not met by the parents. The Petitioner had also alleged that the parents were homeless. The fact that they stayed with various relatives does not sufficiently meet the statutory criteria of homeless. However, the Court finds that the uncared for ground has been proven by a fair preponderance of the evidence for the reasons stated.
B. Disposition
In the case of In re Juvenile Appeal, 177 Conn. 648, 663 (1979), the Court enumerated the factors for a Judge to consider in assessing the best interest of a child. The factors stated by that court are: (1) the length of stay with a non-parent; (2) the nature of the relationship to the non-parent; (3) the degree of contact maintained with the natural parent; and (4) the nature of the relationship with the natural parent.
In this case, the child resided with his parents for approximately four months. The child's contact with his parents has been sporadic (TR of 3/2/00 at pp. 54-55, 71). Salvatore's parents demonstrate minimal parenting skills during supervised visitation (TR of 3/3/00 at PP 33-34.
The parents have not completed the specific steps ordered on June 14, 1999. Neither mother nor father are currently involved in individual counseling. The parents have not followed the recommendations of the Court ordered psychological evaluations. The parents have not complied with the parenting classes to meet the treatment goals identified by the Department. Although the parents have begun couples counseling, they failed to mention to their counselor, Gina Meyer, their domestic violence history. It would not be in Salvatore's best interest to return him to his parents at this time. They must fully comply with the specific steps, and demonstrate both sufficient parenting skills, and a more mature approach to their relationship before this court would consider such a ruling. CT Page 4983
Mrs. Rose S has offered to be a resource for Salvatore. There was no explanation offered to the Court why she was rejected by the Department as a potential placement. Dr. Martinez's psychiatric assessment report indicates that "Mrs S and her husband express a willingness to assume custody of the child. They indicate they have much exposure caring for children and that other grandchildren are often in their home." The doctor further observed that during the session the Ss were observed as warm and affectionate. "The grandmother is able to appropriately anticipate some of the child's needs, anticipate dangerous situations and protects the child." Dr. Martinez recommended that "If Mr. and Mrs. S were to assume guardianship of Salvatore, they would benefit from instruction on child management skills and education regarding the emotional/psychological needs influencing a child's development."
The Petitioner raised three primary concerns during Rose S's cross-examination. First, the fact that Rose S is working full-time; second, Mr. S's health condition; and third, the fact that the Ss' son was listed as an emergency contact Mrs. S responded that she was planning to stop working in a short while. She further indicated that Mr. S was recovered from his health condition, and that she had just listed her son on a form as a potential contact, but would not have to use him in an emergency. Mrs. S indicated a willingness to comply with any court orders to provide a home for the baby.
The Court is concerned with the fact that Rose S is working at the present time. She would appear to be an appropriate resource for Salvatore if she could devote her full time efforts to his care and attention.
Therefore, the Court finds that, currently, it is in the best interest of Salvatore that he be committed to the Department of Children and Families for a period not to exceed twelve months. The court further finds that it is in the child's best interest to have the Specific Steps for the parents, identified as exhibits 3 4, made orders of the Court. The Court further finds that Rose S is a suitable person for Salvatore's placement.
The Court will modify this order to transfer custodial guardianship of Salvatore to Rose S once the following conditions have been met:
 1. Mr. and Mrs. S are to complete instruction on child management skills and education regarding the emotional/psychological needs influencing a child's CT Page 4984 development. This instruction is to be offered to them through a counselor in the Danbury area arranged, approved and paid for by the Petitioner.
 2. Mrs. S is to stop working so that she can devote her full time and energy to Salvatore.
Upon completion of these conditions Mrs. S's attorney shall petition the Court to modify this order to transfer custody and guardianship to Rose S. The Court will then conduct a hearing to assure that the conditions have been met, and upon a satisfactory showing to the Court, the Court will modify the order accordingly.
III. CONCLUSION
Based upon the foregoing reasons the Court finds that the Petitioner has proven by a fair preponderance of the evidence that Salvatore R Jr. was neglected and uncared for pursuant to the Statutory Criteria. The Court further finds that it is in Salvatore's best interest to commit him to the Department of Children and Families for a period of time not to exceed twelve months.
The Court further finds that Rose S is a suitable person for placement and upon satisfactory completion of the court's condition will modify this order to transfer. custody and guardianship to Mrs. Rose S. Judgement entered accordingly.
EVELEIGH, JUDGE.